Thomas E. Towe, Esq.
Towe, Ball, Mackey, Sommerfeld
  & Turner, PLLP
2525 Sixth Avenue North
PO Box 30457
Billings, MT 59107-0457
Phone: 406-258-7337
Fax: 406-248-2647
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| SYLVIA JURGELEWICZ, derivatively on behalf of STILLWATER MINING COMPANY, and individually on behalf of herself and all other similarly situated shareholders of STILLWATER MINING COMPANY. <br><br> Plaintiff, <br><br> vs. <br><br> FRANCIS R. MCALLISTER, CRAIG L. FULLER, STEVEN S. LUCAS, MICHAEL SCHIAVONE, PATRICK M. JAMES, MICHAEL S. PARRETT, SHERYL K. PRESSLER, GEORGE M. BEE, and GARY M. SUGAR, <br><br> Defendants, <br><br> -and- <br><br> STILLWATER MINING COMPANY, a Delaware Corporation, <br><br> Nominal Defendant. | Civil Action No. <br><br> **DERIVATIVE AND CLASS ACTION COMPLAINT (JURY TRIAL DEMANDED)** |

1

## <u>VERIFIED SHAREHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT</u>

Plaintiff ("Plaintiff") alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the Plaintiff herself, which are alleged upon knowledge, as follows:

1.      Plaintiff asserts this action for breach of fiduciary duties and waste of corporate assets derivatively on behalf of Stillwater Mining Company ("Stillwater" or the "Company") against certain members of the Company's Board of Directors (the "Board") for exceeding its authority under the Company's shareholder-approved 2004 Equity Incentive Plan (the "Incentive Plan"). Plaintiff also asserts a direct claim on behalf of herself and the public stockholders of Stillwater entitled to vote at the Company's 2013 annual meeting (the "2013 Annual Meeting") against the Board for breaching its fiduciary duty of candor by filing a false and misleading proxy statement in connection with the 2013 Annual Meeting. Plaintiff also asserts a direct claim for violations of § 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 14-a-9 promulgated thereunder, arising from said false and misleading proxy statement.

2.     The Incentive Plan, which provides for the granting of various equity awards to the Company's officers, employees, and non-employee directors, limits the number of shares subject to awards that could be granted to any individual participant within any calendar year to 250,000.

3.     As described in more detail below, the Board, through its Compensation Committee, granted Francis R. McAllister ("McAllister"), the Company's Chief Executive Officer ("CEO") and Chairman of the Board, an award of 337,447 shares of restricted stock in 2010 and an award of 267,512 shares of restricted stock in 2012, far exceeding the shareholder-approved limit in each of these years. The Board's actions (in granting and/or permitting the awards to McAllister) constitute a breach of fiduciary duty, and the excess awards granted to McAllister are *ultra vires* and should be rescinded.

4.     Additionally, on March 19, the Board filed a Schedule 14A Proxy Statement (the "2013 Proxy") with the United States Securities and Exchange Commission ("SEC") in connection with the 2013 Annual Meeting, which is currently scheduled for May 2, 2013. In the 2013 Proxy, the Board is seeking shareholder votes support for the reelection of eight of the Company's current directors, six of whom served on the Board that violated the Incentive Plan in 2010 and 2012 (including McAllister and all three members of the Compensation Committee). The 2013 Proxy fails to disclose that the Board violated the

shareholder-approved Incentive Plan in 2010 and 2012, and instead effectively misrepresents that the Board implemented the Incentive Plan in accordance with its terms. A board's granting of stock awards in violation of a shareholder-approved stock plan is material information for a shareholder in determining whether to reelect directors, and accordingly the board's failure to disclose such information constitutes a breach of the fiduciary duty of candor as well as a violation of the federal securities laws.

5.     Moreover, adequate disclosure of the Board's violations of the shareholder-approved Incentive Plan takes on additional prominence in this case because a significant shareholder of Stillwater has nominated, and is seeking shareholder support of, its own slate of eight (8) nominees to replace the current Board.  Specifically, on March 8, 2013, the Clinton Group, Inc. (the "Clinton Group"), an investment advisor to various entities that own a 1.1% stake in the Company,  filed a Schedule 14A Proxy Statement (the "Clinton Group Proxy") with the SEC in connection with the 2013 Annual Meeting. In the Clinton Group Proxy, the Clinton Group highlights numerous questionable business decisions made by the Company over the past two-and-a-half years that have destroyed shareholder value; proposes a six-step guide for the Company that will "will lead to operational and financial success for the benefit of all stockholders"; and nominates its own slate of eight (8) directors with "decades of combined

knowledge from their prior operational, directorship and government roles." Accordingly, faced with the decision of whether to reelect the current Board or to replace the Board with the Clinton Group's nominees, it is of utmost importance that Stillwater shareholders be adequately informed about the current Board's past violations of a shareholder-approved Incentive Plan.

6.    As a result of the above misconduct, the Company and its shareholders have been and will be harmed.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of § 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  Plaintiff is a citizen of Pennsylvania and no defendant is a citizen of Pennsylvania.

8.    This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

9.    Venue is proper in this district because nominal defendant Stillwater is headquartered in this district.

## THE PARTIES

10.     Plaintiff is and has been a shareholder of Stillwater since 2003. Plaintiff is a citizen of Pennsylvania.

11.     Nominal party Stillwater is a Delaware corporation with its principal place of business at 1321 Discovery Drive, Billings, Montana 59102. Stillwater engages in developing, extracting, processing, smelting, refining, and marketing palladium, platinum, and associated metals (PGMs).  The Company also explores for nickel, copper, gold, and silver ores.

12.     Defendant McAllister has been the CEO and Chairman of the Board since February 2001, and a director of the Company since January 2001. On information and belief, McAllister is a citizen of Nevada.

13.     Defendant Craig L. Fuller ("Fuller") has been a director of the Company since June 2003. Fuller has also served as a member of the Board's Compensation Committee during the time of the grants discussed herein. On information and belief, Fuller is a citizen of Virginia.

14.     Defendant Patrick M. James ("James") has been a director of the Company since January 2001. James has also served as a member of the Board's Compensation Committee during the time of the grants discussed herein.   On information and belief, James is a citizen of Montana.

15.     Defendant Steven S. Lucas ("Lucas") has been a director of the Company since June 23, 2003. Lucas has also served as the Chairman of the Board's Compensation Committee during the time of the grants discussed herein. On information and belief, Lucas is a citizen of California.

16.     Defendant Michael Schiavone ("Schiavone") has been a director of the Company since January 2009.   On information and belief, Schiavone is a citizen of Montana.

17.     Defendant Michael S. Parrett ("Parrett") has been a director of the Company since May 2009.   On information and belief, Parrett is a citizen of Montana.

18.     Defendant Sheryl K. Pressler ("Pressler") has been a director of the Company since May 2002.   On information and belief, Pressler is a citizen of Montana.

19.     Defendant George M. Bee ("Bee") has been a director of the Company since November 2012.   On information and belief, Bee is a citizen of Montana.

20.     Defendant Gary M. Sugar ("Sugar") has been a director of the Company since August 2012.   On information and belief, Sugar is a citizen of Montana.

21.     Defendants McAllister, Fuller, James, Lucas, Schiavone, Parrett, Pressler, Bee and Sugar are hereinafter collectively referred to as the "Defendants." All references to the "Compensation Committee" refer to Defendants Lucas, James and Fuller.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *The Incentive Plan*

22.     On March 10, 2004, the Company's Board of Directors adopted and approved the Incentive Plan. At the Company's annual meeting held on April 29, 2004, the Board sought and received approval of the Incentive Plan from the Company's shareholders.

23.     On April 10, 2007, the Board filed a Schedule 14A Proxy Statement (the "2007 Proxy") with the SEC in connection with the Company's 2007 annual meeting. In the 2007 Proxy, the Board sought, among other things, approval of certain amendments to the Incentive Plan, and recommended that shareholders vote to approve the amended Incentive Plan. The Company's shareholders approved the amended Incentive Plan on May 3, 2007.

24.     The Incentive Plan provides for grants of stock options, stock appreciation rights, restricted stock, and other stock-based awards to officers, employees, non-employee directors, and consultants of the Company.

25.     According to the Section 3(a) of the Incentive Plan, the Board, or a committee designated by the Board, is responsible for administering the Incentive Plan.

26.     The Incentive Plan provides in clear and unambiguous terms that the maximum number of shares subject to awards that an individual may be granted in any calendar year shall not exceed 250,000.   Specifically, Section 4(c) of the Incentive Plan states:

> Subject to adjustment as provided in Section 4(c), **the number of Shares subject to Awards that are granted to any one individual in a single calendar year may not exceed 250,000**. Determinations made in respect of the limitation set forth in the preceding sentence shall be made in a manner consistent with Section 162(m) of the Code. (Emphasis added.)

27.     The 250,000 limit was emphasized each time the Board sought shareholder approval of the Incentive Plan. Specifically, the Schedule 14A Proxy Statement filed with the SEC on March 25, 2004 (the "2004 Proxy") stated:

> Upon stockholder approval of this Proposal, the number of shares of Common Stock subject to awards granted to any one individual under the 2004 Plan in a single calendar year may not exceed 250,000, subject to adjustment for certain changes in capitalization and corporate transactions, as described below.

Similarly, the 2007 Proxy stated:

> The number of shares of Common Stock subject to awards granted to any one individual under the 2004 Plan in a single calendar year may not exceed 250,000, subject to adjustment for certain changes in capitalization and corporate transactions, as described below.

Both the 2004 Proxy and the 2007 Proxy described the 250,000 limit as one of the "material features" of the Incentive Plan.

28.   As described immediately below, however, the Board violated the 250,000 share limit in both 2010 and 2012.

### The Awards to McAllister

29.   On February 18, 2010, the Compensation Committee granted McAllister an award of 337,447 shares of restricted stock. As stated in the April 4, 2011 Schedule 14A Proxy Statement filed by the Company with the SEC (the "2011 Proxy"), these awards were granted "under the Company's 2004 Equity Incentive Plan." Thus, in 2010, the Compensation Committee granted McAllister 87,447 shares in excess of the 250,000 share calendar year limit.

30.   On February 17, 2012, the Compensation Committee granted McAllister 267,512 shares of restricted stock units. As stated in a Form-4 filed by McAllister with the SEC on March 9, 2012, the restricted stock units were granted "under the Stillwater Mining Company 2004 Equity Incentive Plan." Thus in 2012, the Compensation Committee granted McAllister 17,512 shares in excess of the 250,000 calendar year limit.

31.   Consequently, a total of 104,959 excess shares were granted to McAllister under the Incentive Plan in 2010 and 2012. These excess shares are *ultra vires* and should be rescinded.

10

### The 2013 Proxy is False and Misleading

32.     On March 19, 2013 the Company filed the 2013 Proxy in connection with the 2013 Annual Meeting, which is scheduled for May 2, 2013.

33.     In the 2013 Proxy, the Board is soliciting shareholder approval for, among other things, the re-election of each of the Company's current directors other than defendant Schiavone (who appears not to be running for re-election).

34.     Six of the eight directors being nominated for re-election by the Board (defendants McAllister, Fuller, Lucas, James, Parrett, and Pressler) served on the Board that violated the Incentive Plan in 2010 and 2012, including all three members of the Compensation Committee.

35.     The 2013 Proxy devotes almost 20 pages in its "Compensation Discussion and Analysis" section, where it provides, among other things, a "detailed explanation of the objectives and principles that underlie [the Company's] executive compensation program"; describes the Company's "compensation decision-making process"; and provides a detailed explanation of the compensation received by the Company's named executive officers in 2012.

36.     Following the "Compensation Discussion and Analysis" section, the 2013 Proxy contains numerous tables detailing the compensation received by the Company's named executive officers, including a Summary Compensation Table

that shows how much compensation was received by the Company's named executive officers from 2010 through 2012.

37.    However, nowhere in this discussion does the 2013 Proxy disclose that during 2010 and 2012, the Compensation Committee granted McAllister more shares than allowed under the shareholder-approved Incentive Plan.

38.    Rather, the 2013 Proxy misrepresents that the Incentive Plan was implemented in accordance with its terms, stating that awards were issued under the Incentive Plan "subject to the terms of the 2004 Plan," while stressing the "ongoing best compensation practices" purportedly implemented by the Company, and the "value" the Compensation Committee places on "the input of the [the Company's] shareholders regarding [the Company's] executive compensation programs and practices."

39.    The Board's repeated violation of a shareholder-approved Incentive Plan is material information that Stillwater shareholders would find important in determining whether to reelect the Company's current directors to another one-year term. It is especially important information for a shareholder in determining whether to re-elect Fuller, Lucas and James, each of whom served on the Compensation Committee that granted the awards in violation of the Incentive Plan.

12

40.    Moreover, adequate disclosure of the Board's violations of the shareholder-approved Incentive Plan is all the more important in this case because the Clinton Group, a significant shareholder of Stillwater, has nominated, and is seeking shareholder support of, its own slate of eight nominees to replace the current Board.

41.    The Clinton Group is an investment advisor to various partnerships and investment vehicles that own a 1.1% stake in the Company.  On December 20, 2012,  the Clinton Group sent a letter to the Board outlining several issues and concerns regarding, among other things, the Company's strategy, acquisitions, cost structure, and recent financing and stating Clinton's belief that the Company "should augment the [B]oard with new directors and the long-serving incumbents should resign."

42.    On March 8, 2013, the Clinton Group filed the Clinton Group Proxy seeking shareholder support for the election of the alternative slate of directors nominated by the Clinton Group.

43.    In the Clinton Group Proxy, the Clinton Group highlights numerous questionable business decisions made by the Company over the past two-and-a-half years that have destroyed shareholder value and proposes a six-step guide for the Company that "will lead to operational and financial success for the benefit of all stockholders."

44.    In the Clinton Group Proxy, the Clinton Group also questions both McAllister's ability to lead the Company as well as the handsome compensation package McAllister has received during his tenure as the Company's CEO. As stated in the Clinton Proxy:

> First, the Company's Chief Executive Officer, Mr. McAllister, should be replaced by a proven executive with a commitment to operating the Montana mines efficiently and to ridding the Company of its prospecting and speculative investments in Canada and Argentina. Mr. McAllister has had his chance; he has served as Chief Executive Officer and Chairman for more than a decade. And while the incumbent Board has rewarded him handsomely – with more than $39 million in pay over that time – stockholders are worse off; the Common Stock is down 64% (through March 6, 2013) during his tenure and stockholders have lost nearly $900 million in value. The Company needs new leadership and the alignment of executive pay with performance.

45.    Continuing in this vein, the Clinton Proxy further states:

> We believe stockholders should vote to disapprove the compensation of the Company's executive officers. As noted above, the Company's CEO has received significant compensation, totaling more than $39 million over his tenure, while stockholders have lost nearly $900 million.
>
> In 2011, the Company, at the urging of its management team, bought Peregrine to diversify the Company into copper and gold and into Argentina. The Company's stock declined by 47% in the month after the deal was announced and was down 51% for the year. Yet, the compensation committee and Board awarded the Company's CEO more than $5 million in compensation, far in excess of the pay awarded on average to the Company's peers. Indeed, while stockholders suffered in 2011, Mr. McAllister made more than he ever has at Stillwater and was paid more than any other public company CEO in Montana.

46.     Accordingly, faced with the decision of whether to reelect the current Board or replace it with the Clinton Group's nominees, it is of utmost importance that Stillwater shareholders be adequately informed about the current Board's violations of a shareholder-approved Incentive Plan in granting stock-based compensation to the Company's underperforming CEO, McAllister.

47.     Furthermore, by issuing the false and misleading 2013 Proxy, the Board breached its fiduciary duties to the Company's stockholders and violated § 14(a) of the Exchange Act.

48.     As a result, the election of directors currently scheduled to be held on May 2, 2013 should be enjoined until the Board amends the 2013 Proxy to remedy the material disclosure issues described above.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

49.     Plaintiff brings this action derivatively on behalf of Stillwater to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of Defendants' misconduct.

50.     Plaintiff has owned Stillwater common stock continuously during the wrongful course of conduct alleged herein and continues to hold Stillwater stock.

51.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

52.     At the time of this filing the Board consists of the following nine directors: McAllister, Fuller, James, Lucas, Parrett, Pressler, Schiavone, Bee, and Sugar. Each member of the Board, with the exception of Bee and Sugar, was on the Board when the Incentive Plan was violated in 2010 and 2012.

53.     Plaintiff did not make a demand on the Board prior to instituting this Action. A pre-suit demand upon the Board is futile for several reasons.

54.     Defendants Fuller, James and Lucas were members of the Compensation Committee that granted awards in violation of the Incentive Plan's 250,000 share limit. The Compensation Committee's actions in granting awards in violation of the express, unambiguous terms of the Incentive Plan, were *ultra vires* and could not have been a good faith exercise of business judgment. In addition, as a result of their actions, Defendants Fuller, James and Lucas face a substantial likelihood of liability, and therefore are incapable of considering a demand here. Accordingly, demand as to Fuller, James and Lucas is excused.

55.     In addition, Defendants Pressler, Parrett and Shiavone knew and/or were on notice that the 250,000 share limit was violated. The remaining directors needed to be aware of only two facts in order to be on notice of the wrongdoing -- the terms of the Incentive Plan and the size of the awards made to McAllister -- and each was aware of these facts.

a. Defendant Pressler has served as a director since 2002. Pressler was on the Board that adopted and recommended that shareholders approve the Incentive Plan in 2004. Pressler was on the Board that amended and restated the Incentive Plan in 2007. Pressler is eligible to receive awards under the Incentive Plan, and has received awards under the Incentive Plan annually from 2005 through 2011. Finally, Pressler is a member of the Board responsible for administering the Incentive Plan.  Accordingly, it is reasonable for the Court to infer that Pressler was aware of the 250,000 share limit in the Incentive Plan. And even if it somehow could be doubted that members of any Board could be unaware of the basic structure of compensation awarded to the CEO, there is ample evidence for the court to infer that Pressler was aware of the size of the awards made to McAllister in 2010 and 2012. The size of the awards made to McAllister in 2010 and 2012 were detailed in the corresponding 2011 and 2013 proxy statements field by the Company as well as the Form 4s filed by McAllister. Indeed, the 2011 Proxy and 2013 Proxy both state that the entire Board has "has reviewed and discussed with the Company's management the section entitled 'Compensation Discussion and Analysis' to be included in the Company's . . .Proxy Statement" and that "based on the review and discussion referred to above, the Committee has recommended to the Company's Board of Directors, and the

Board of Directors has approved, such section to be included in the Proxy Statement."

b. Defendants Schiavone and Parrett have served as directors of the Company since 2009. Schiavone and Parrett are eligible to receive awards under the Incentive Plan, and each received awards under the Incentive Plan from 2009 through 2011. And Schiavone and Parrett are members of the Board responsible for administering the Incentive Plan. Accordingly, it is reasonable for the Court to infer that Schiavone and Parrett were aware of the 250,000 share limit in the Incentive Plan. And even if it somehow could be doubted that members of any Board could be unaware of the basic structure of compensation awarded to the CEO, there is ample evidence for the court to infer that Schiavone and Parrett were aware of the size of the awards made to McAllister in 2010 and 2012. The size of the awards made to McAllister in 2010 and 2012 were detailed in the corresponding proxy statements field by the Company as well as the Form 4s filed by McAllister. Indeed, the 2011 Proxy and 2013 Proxy both state that the entire Board has "has reviewed and discussed with the Company's management the section entitled 'Compensation Discussion and Analysis' to be included in the Company's . . .Proxy Statement" and that "based on the review and discussion referred to above, the Committee has recommended to the Company's Board of

Directors, and the Board of Directors has approved, such section to be included in the Proxy Statement."

Accordingly, Defendants Pressler, Parrett and Schiavone face a substantial likelihood of liability and therefore are incapable of objectively considering a demand here.

56.     In addition, Defendant McAllister is incapable of considering a demand in this action because he is neither disinterested nor independent. McAllister received the awards challenged herein, and thus has a strong financial incentive to maintain the status quo by not authorizing any corrective action because it could force him to disgorge the improperly obtained awards. Accordingly, McAllister is not disinterested. In addition, as CEO of the Company, and with his principal source of income based on his role with the Company, McAllister is not independent.  In fact, the 2013 Proxy concedes that McAllister does not qualify as an "independent" director under the standards set forth in the Company's Corporate Governance Principles.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of owners of Stillwater common stock as of March 6, 2013, the record date for the determination of shareholders entitled to vote at the 2013 Annual Meeting (the "Class"). Excluded from the Class are

Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

58.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of March 6, 2013, there were over 117.9 million shares of common stock outstanding. All members of the Class may be identified from records maintained by Stillwater or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

59.     Questions of law and fact are common to the Class, including, *inter alia*, the following:

    a.  Have the Individual Defendants breached their fiduciary duties by filing the false and misleading 2013 Proxy; and

    b.  Whether Plaintiff and the other members of the Class would be irreparably harmed if the 2013 Annual Meeting was held without any of the corrective actions described herein.

60.     Plaintiff's claims are typical of the claims of the other members of the class. Plaintiff is committed to prosecuting this action, will fairly and adequately

protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

61.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

62.    Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

63.    Defendants have acted on grounds generally applicable to the class, making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I
### Breach of Fiduciary Duty
### (Against Defendants McAllister, Fuller, James, Lucas, Parrett, Pressler, and Schiavone)

64.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.    As directors of the Company, defendants McAllister, Fuller, James, Lucas, Parrett, Pressler, and Schiavone owed the Company and its shareholders the fiduciary obligations of loyalty, candor, good faith, and due care.

21

66.     In authorizing, approving, and/or by abdication of duty permitting the granting of awards in violation of the terms of the Incentive Plan, defendants McAllister, Fuller, James, Lucas, Parrett, Pressler, and Schiavone exceeded their authority under the Incentive Plan and did not act in good faith toward the Company, and thus breached their fiduciary duties under Delaware law.

67.     These actions were not a good faith exercise of business judgment to protect and promote the Company's corporate interests, but rather lined the pockets of McAllister at the expense and to the detriment of the Company.

68.     McAllister breached his fiduciary duties to the Company by accepting grants in violation of the Incentive Plan for his own personal benefit at the expense and to the detriment of the Company.   Accordingly, McAllister breached his fiduciary duty of loyalty and good faith.

69.     As a result of Defendants' actions, the Company has been and will be damaged.

70.     Plaintiff and the Company have no adequate remedy at law.

## COUNT II
### Waste of Corporate Assets
### (Against Defendants McAllister, Fuller, James, Lucas, Parrett, Pressler, and Schiavone)

71.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72.    Defendants McAllister, Fuller, James, Lucas, Parrett, Pressler, and Schiavone have caused and will cause the Company to waste valuable corporate assets by granting McAllister awards in excess of what was authorized under the Incentive Plan.

73.    By granting McAllister awards in excess of the amount allowed under the Incentive Plan for the 2010 and 2012 year, Defendants McAllister, Fuller, James, Lucas, Parrett, Pressler, and Schiavone granted McAllister awards that no director of ordinary sound business judgment would award, so as to constitute waste.

74.    As a result of this waste of corporate assets, Defendants McAllister, Fuller, James, Lucas, Parrett, Pressler, and Schiavone are liable to the Company.

## COUNT III
### Unjust Enrichment
### (Against McAllister)

75.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

76.    McAllister received unauthorized personal financial benefits as a result of the awards challenged herein.

77.    It would be unconscionable and against fundamental principles of justice, equity, and good conscience for McAllister to retain the benefits of the awards that were granted in express violation of the Incentive Plan.

23

78.     McAllister has been unjustly enriched at the expense and to the detriment of the Company.

79.     Accordingly, this Court should order McAllister to disgorge the stock options awarded in excess of the applicable annual limit in the Incentive Plan.

80.     Plaintiff has no adequate remedy at law

## COUNT IV
## Breach of Fiduciary Duty of Candor In Connection With The 2013 Proxy
### (Class Claim Against Defendants)

81.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

82.     The fiduciary duties of the Defendants require them to be completely truthful with the Company's shareholders and disclose all information material to the decisions confronting Stillwater's shareholders at the 2013 Annual Meeting.

83.     As set forth above, the Defendants have breached their fiduciary duty by filing and seeking shareholder action on the basis of the materially false and misleading 2013 Proxy.

84.     As a result, Plaintiff and Class members are being harmed irreparably.

85.     Plaintiff and the Class have no adequate remedy at law.

## COUNT V
## Violations of § 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder
### (Individual Claim Against Defendants)

86.     Plaintiff repeats all previous allegations as if set forth in full herein.

87.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

88.     Defendants have issued the 2013 Proxy Statement. The 2013 Proxy Statement violates Section 14(a) and Rule 14a-9 because, as described above, it contains false and misleading statements.

89.     The misrepresentations in the 2013 Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the 2013 Annual Meeting.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.     A declaration that the awards granted to McAllister in 2010 and 2012 in excess of the applicable annual limit were *ultra vires* and not authorized by the Incentive Plan;

B.     Rescission of the excess grants awarded to McAllister;

25

C.     Against Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets, and violation of the Incentive Plan, plus pre-judgment and post-judgment interest;

D.     As to Count IV, declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

E.     Enjoining, preliminarily and permanently, the 2013 Annual Meeting unless, and until, the corrective action described above is taken;

F.     Equitable and/or injunctive relief as necessary or permitted by law and equity, including disgorgement, attachment, impoundment, and/or imposition of a constructive trust on or otherwise restricting the disposition/exercise of the challenged grants discussed herein;

G.     Directing Stillwater to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and policies and to protect the Company and its shareholders from a recurrence of the damaging events described herein;

H.     Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

I.      Granting Plaintiff such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED this 4th day of April, 2013.

TOWE, BALL, MACKEY,
SOMMERFELD & TURNER, PLLP
Attorneys for Plaintiff

By    /s/Thomas E. Towe
Thomas E. Towe

LEVI & KORSINSKY, LLP
Eduard Korsinsky
Steven J. Purcell
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
*Attorneys for Plaintiff*